<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LEMONT LOVE,<br><br>           Plaintiff,<br><br>    v.<br><br>CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,<br><br>         Defendant. | Case No. 2:25-cv-13819 (BRM) (JRA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Defendant Verizon Wireless Services, LLC's[1] ("Verizon") Motion (ECF No. 25) to Dismiss *pro se* Plaintiff LeMont Love's ("Love") Amended Complaint (ECF No. 22-1) for Failure to State a Claim or, alternatively, to Compel Arbitration under Federal Rule of Civil Procedure ("Rule") 12(b)(6) ("Motion"). This Court has jurisdiction pursuant to 42 U.S.C. § 1332(a). Having reviewed and considered the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Rule 78(b), for the reasons set forth below and for good cause having been shown, Verizon's Motion to Compel Arbitration is **GRANTED**

---

[1] The Motion was filed on behalf of Verizon and individual defendants Andrea Southern and Matthew Griffin (ECF No. 25), *i.e.*, the defendants identified in the initial Complaint (*See* ECF No. 2). However, the Amended Complaint altered the caption to identify the appropriate party as Cellco Partnership d/b/a Verizon Wireless. (ECF No. 22-1.) The Amended Complaint also voluntarily dismissed the claims against Andrew Southern and Matthew Griffin in compliance with Rule 41(a)(1)(A)(i). (*See id.*); *see also W. Run Student Housing Assocs., LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013) ("[T]he amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.'" (alteration in original) (quoting *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d Cir. 1996))).

and Verizon's Motion to Dismiss the Amended Complaint for Failure to State a Claim is **DENIED AS MOOT**.

## I.    BACKGROUND

For the purpose of this motion, the Court attempts to glean the factual allegations through liberal construction of the Complaint and accepts those allegations as true drawing all inferences in the light most favorable to the *pro se* plaintiff. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008); *Alexander v. Gennarini*, 144 F. App'x 924, 926 (3d Cir. 2005); *see also Cooke v. Experian Info. Sols., Inc.*, Civ. A. No. 22-5375, 2024 WL 1142214, at *2 (D.N.J. Mar. 15, 2024) ("When considering a motion to dismiss the complaint of a *pro se* litigant, courts must bear in mind that such pleadings are held to less stringent standards than more formal pleadings drafted by lawyers."); *Huff v. Atl. Cnty. Just. Facility*, Civ. A. No. 20-9761, 2021 WL 307303, at *2 (D.N.J. Jan. 29, 2021) ("Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." (quoting *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339–40 (3d Cir. 2011))); *but see Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) ("*[P]ro se* litigants still must allege sufficient facts in their complaints to support a claim. And they still must serve process on the correct defendants. At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." (internal citations omitted)). The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

## A.    Factual Background

On May 15, 2024, Love and Verizon entered into an agreement for multiple lines of service with new devices, including a Samsung Galaxy S24 and an Apple iPhone 14 ("Agreement"[2]).[3] (*See* ECF No. 22-1 ¶ 10; *see also* ECF Nos. 25-3, 25-4, 25-5.) The Agreement incorporated the Verizon Customer Agreement ("CA") by reference. (*See* ECF No. 25-4 at 2, 5.) In relevant part, the Agreement states:

> ANY DISPUTES UNDER THIS [AGREEMENT] (INCLUDING, WITHOUT LIMITATION, ANY DISPUTES AGAINST THE SELLER AND/OR VERIZON WIRELESS) SHALL BE RESOLVED IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS IN [THE] [CA] UNDER THE HEADING: "HOW DO I RESOLVE DISPUTES WITH VERIZON WIRELESS", WHICH TERMS ARE INCORPORATED BY REFERENCE SPECIFICALLY, YOU AND VERIZON WIRELESS (AND/OR THE SELLER) BOTH AGREE TO RESOLVE ALL DISPUTES UNDER THIS [AGREEMENT] ONLY BY ARBITRATION OR SMALL CLAIMS COURT AND YOU WAIVE ANY RIGHT TO A JUDGE OR JURY IN ANY ARBITRATION.

(*Id.* at 2.) The CA, under the heading "How Do I Resolve Disputes with Verizon?" states in relevant part:

> YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION[,] OR IN SMALL CLAIMS COURT AS DISCUSSED BELOW, YOU UNDERSTAND THAT BY THIS AGREEMENT YOU ARE GIVING UP THE RIGHT TO BRING A CLAIM IN COURT OR IN FRONT OF A JURY. WHILE THE PROCEDURES IN ARBITRATION MAY BE

---

[2] Verizon identifies the Agreement by multiple names within same, *i.e.*, the "Installment Loan Agreement," the "Security Agreement," and the "Device Payment Agreement." (*See, e.g.*, ECF No. 25-4 at 1 ("[P]ursuant to the terms of this Installment Loan Agreement/Security Agreement (the 'Device Payment Agreement').").)

[3] Verizon provides two separate Device Payment Agreements, one for the Samsung Galaxy S24 (ECF No. 25-4) and the other for the Apple iPhone 14 (ECF No. 25-5). As the terms of the Device Payment Agreements are effectively identical, for ease of reference the Court refers to the two agreements as the singular "Agreement."

3

DIFFERENT, AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD, SUBJECT TO THE LIMITS ON ARBITRATOR AUTHORITY SET FORTH BELOW. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO, THE SAME DEFENSES ARE ALSO AVAILABLE TO BOTH PARTIES AS WOULD BE AVAILABLE IN COURT INCLUDING ANY APPLICABLE STATUTE OF LIMITATIONS. WE ALSO BOTH AGREE THAT:

. . . THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT, EXCEPT FOR SMALL CLAIMS COURT CASES OR AS SPECIFICALLY NOTED BELOW, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT, WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") . . . . THIS INCLUDES, BUT IS NOT LIMITED TO, ANY DISPUTE REGARDING THE VALIDITY, ENFORCEABILITY, OR SCOPE OF ANY PORTION OF THIS AGREEMENT (INCLUDING THE AGREEMENT TO ARBITRATE), ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US, ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES, OUR EFFORTS TO COLLECT AMOUNTS YOU MAY OWE US FOR SUCH PRODUCTS OR SERVICES, OR ALLEGED PERSONAL INJURY OR INVASION OF PRIVACY RELATING TO SUCH PRODUCTS OR SERVICES AND INCLUDES ANY DISPUTES YOU HAVE WITH OUR EMPLOYEES OR AGENTS [("Arbitration Clause")].

(ECF No. 25-7 at 7.) The signature page of the Agreement states Love was provided with an opportunity to review the terms of the Agreement prior to executing same. (ECF No. 25-5 at 5.) Furthermore, the signature page states the terms of the CA were available online for review. (*Id.*) Love executed the signature page, agreeing to the terms of both the Agreement and the CA. (*Id.*)

Love was subsequently charged in the Superior Court of New Jersey, Law Division, Criminal Part, entitled *State v. Love*, Docket No. MID-24-3171. (ECF No. 22-1 ¶ 9.) On May 31, 2025, Love issued a *pro se* subpoena ("Subpoena") to Verizon under New Jersey Court Rule 1:9-1. (*See generally* ECF No. 25-11.) The Subpoena requested Verizon to release all records

4

pertaining to the Samsung Galaxy S24 and the Apple iPhone 14 relating to the time period of 11:00 a.m. to 8:00 p.m. on June 20, 2024, including but not limited to the cell site location information. (ECF No. 2 ¶ 8; *accord* ECF No. 25-11 at 1–2.) Love instructed Verizon to release the records directly to Love and not to produce the records to the Superior Court "as doing so would expose confidential legal work product and prejudice [Love]'s litigation strategy."[4] (ECF No. 2 ¶ 9; *see also id.* ¶ 15 (stating producing the records to the Superior Court would place the State "on notice of the nature of [Love]'s subpoena and defense strategy" and "[g]iven the [court]'s duty to ensure fairness and reciprocal discovery, [Love] would likely be ordered to disclose those [records] to the prosecution").)

In response, Verizon advised Love the records could not be released directly to Love as "*[p]ro [s]e* requests are returnable to the court only." (*Id.* ¶ 10.) Verizon also requested a processing fee of $75/hour plus shipping to produce the requested records. (*Id.* ¶ 11.) Verizon subsequently produced the records to the Superior Court[5] (*Id.* ¶ 12), which were then withheld from Love (ECF No. 10 ¶ 7 (stating "[t]o date, [Love] has never received the subpoenaed cell site location data")).

### B.    Procedural History

On June 25, 2025, Plaintiff filed the Complaint against Verizon and individual defendants Andrea Southern and Matthew Griffin in the Superior Court of New Jersey, Law Division, Civil Part. (ECF No. 2; *see also* ECF No. 22-1 at 10.) The Complaint alleged twelve causes of action

---

[4] Although the Subpoena requested Verizon to release the records to Love directly, the Subpoena did not instruct Verizon the records were being requested as "confidential legal work produce" and not to produce the records to the Superior Court. (ECF No. 25-11.) Love presumably advised Verizon of these instructions orally after issuing the Subpoena. (*See* ECF No. 2 ¶ 12.)

[5] The records produced to the Superior Court were allegedly encrypted, which could only be viewed by Love. (ECF No. 2 ¶ 15.)

against Verizon. (*See* ECF No. 2.) The Complaint was removed to the United States District Court for the District of New Jersey on July 28, 2025. (ECF No. 1.)

On August 4, 2025, Verizon filed a motion to dismiss the Complaint for failure to state a claim or, alternatively, to compel arbitration pursuant to Rule 12(b)(6). (ECF No. 5.) Love filed an opposition on September 22, 2025 (ECF No. 10), and Verizon filed a reply on October 1, 2025 (ECF No. 13).

On October 2, 2025, Love filed a motion to amend the pleading pursuant to Rule 15. (ECF No. 14.) Verizon filed an opposition on October 20, 2025. (ECF No. 19.) On October 21, 2025, the Court entered a text order granting Love's motion to amend the pleadings pursuant to Rule 15 and denying as moot Verizon's motion to dismiss for failure to state a claim or, alternatively, to compel arbitration pursuant to pursuant to Rule 12(b)(6). (ECF No. 21.)

On October 26, 2025, Love filed the Amended Complaint.[6] (ECF No. 22-1.) The Amended Complaint alleges only one cause of action against Verizon requesting a declaratory judgment and injunctive relief.[7] (*Id.* ¶¶ 34–41.) Specifically, Love "seeks a declaration that, absent a specific court order directing alternative routing, a subpoena recipient must produce records to the addressee and place designated on the subpoena, including direct production to a *pro se* criminal defendant, and that Verizon's categorical "*pro se* → court-only" policy is unlawful and

---

[6] On October 26, 2025, Love erroneously filed a second motion to amend the complaint rather than the amended complaint. (ECF No. 22.) As the Court had granted the prior motion to amend the pleading, the Court accepted the proposed amended complaint attached to the motion as the Amended Complaint via a text order on November 3, 2025. (ECF No. 23.)

[7] Although the Amended Complaint only alleges one cause of action, the pleading attempts to "reserve" the right to assert a claim under the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 58:8-1, *et al*. (ECF No. 22-1 at 7.)

unenforceable." (*Id.* ¶ 39.) The Amended Complaint voluntarily dismissed the claims against Andrew Southern and Matthew Griffin. (*Id.* at 10.)

On December 1, 2025, Verizon filed the Motion to dismiss the Amended Complaint for failure to state a claim or, alternatively, to compel arbitration pursuant to pursuant to Rule 12(b)(6). (ECF No. 25.) Pursuant to Local Rule 7.1(d)(2), an opposition was to be filed by December 22, 2025. (*See* ECF No. 28.) On January 8, 2026, the Court entered a text order *sua sponte* extending the deadline to oppose the Motion to January 22, 2026. (*Id.*) The text order warned Love the "failure to timely oppose the motion will result in the motion being considered unopposed and may result in dismissal." (*Id.*) At this time, no opposition has been filed in response to the Motion. However, the Amended Complaint includes an "Arbitration Position and Request for Limited Discovery if Raised" ("Arbitration Position"), which raises arguments in opposition to compelling arbitration in anticipation of Verizon re-filing its Motion. (ECF No. 22-1 ¶¶ 25–33.) Recognizing Love's *pro se* status, the Court will treat the Arbitration Position as Love's opposition to the Motion.

## II.  LEGAL STANDARD

### A.  Motion to Compel

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, "establishes a policy in favor of arbitration that requires the liberal reading of arbitration agreements and the resolution of any doubts in favor of arbitration." *S. Broward Hosp. Dist. v. Medquist, Inc.*, 258 F. App'x 466, 467 (3d Cir. 2007) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, (1983)). The FAA provides a written provision "to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Decades ago, the Supreme Court discussed 9 U.S.C.

7

§ 2 as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *White v. Samsung Elecs. Am., Inc.*, 61 F.4th 334, 338 (3d Cir. 2023) (quoting *Moses*, 460 U.S. at 24). More recently, though, the Supreme Court explained that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (quoting *Moses*, 460 U.S. at 24). Rather, this policy "is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)). "Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind." *Id.*

When addressing a motion to compel arbitration, a federal court is "limited to a 'narrow scope' of inquiry." *Gay v. CreditInform*, 511 F.3d 369, 386 (3d Cir. 2007) (quoting *Great W. Mortg. Corp. v. Peacock*, 110 F.3d 222, 228 (3d Cir. 1997)); *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020). The Court may consider only narrow "gateway matters" that touch on the question of arbitrability, such as whether an arbitration agreement applies to a particular controversy, or whether the parties are bound by the arbitration clause. *Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 585 (3d Cir. 2007).

"[Q]uestions of arbitrability, including challenges to an arbitration agreement's validity, are presumed to be questions for judicial determination." *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013) (citation omitted). "In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, Civ. A. No. 10-2287, 2010 WL 3076861, at * 3 (D.N.J.

8

Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mortg. Corp.*, 420 F. Supp. 2d 349, 356 (D.N.J. 2006)). "State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate." *Sarbak v. Citigroup Glob. Mkts., Inc.*, 354 F. Supp. 2d 531, 537 (D.N.J. 2004) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002)).

"Where arbitrability is apparent on the face of the complaint, a Rule 12(b)(6) standard of review should be applied to the motion to compel arbitration." *Sauberman v. Avis Rent a Car Sys., L.L.C.*, Civ. A. No. 17-756, 2017 WL 2312359, at *2 (D.N.J. May 26, 2017) (citing *Guidotti*, 716 F.3d at 774). However, the "Rule 12(b)(6) standard is inappropriate when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate" or when "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774. Rather, courts should use the Rule 56 summary judgment standard. *Id.* "Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Operations, Dep't of Hum. Res.*, Civ. A. No. 14-7455, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015). In making this determination, the party opposing arbitration receives "the benefit of all reasonable doubts and inferences that may arise." *Id.*

### B.    Motion to Dismiss for Failure to State a Claim

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences from the facts alleged

9

in the light most favorable to [the non-moving party]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" must be pled; it must include "factual enhancement" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citations omitted). In assessing plausibility, the court may not consider any "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, after *Iqbal*, conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible, allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 570). The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See id.* at 670.

While, generally, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral to or explicitly relied* upon in the complaint." *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Shaw*, 82 F.3d at 1220). However, "[w]hen the truth of facts in an 'integral' document are contested by the well-pleaded facts of a complaint, the facts in the complaint must prevail." *Princeton Univ.*, 30 F.4th at 342.

11

## III.    DECISION

Although the Court is granted some leeway to choose among competing grounds to dispose of an action, *see Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007), the Third Circuit has clarified there exists a mandatory sequence in resolving same. The Court is required to first resolve non-merit issues, such as those involving subject matter jurisdiction under Rule 12(b)(1), personal jurisdiction under 12(b)(2), and venue under 12(b)(3);[8] then arbitrability issues, such as a motion to compel arbitration under Rule 12(b)(6) or 56; and finally merit issues, such as a failure to state a claim under Rule 12(b)(6). *Castillero v. Xtend Healthcare, LLC*, Civ. A. No. 22-2099, 2023 WL 8253049, at *9 (D.N.J. Nov. 29, 2023) (citing *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95 (3d Cir. 2018); *Silfee v. Automatic Data Processing, Inc.*, 696 F. App'x 576, 577 (3d Cir. 2017); *Edmondson v. Lilliston Ford, Inc.*, 593 F. App'x 108, 112 (3d Cir. 2014)). "District courts may not alter this sequencing . . . ." *Silfee*, 696 F. App'x at 577.

Here, Verizon moves to dismiss the Amended Complaint for failure to state a claim and, alternatively, to compel arbitration pursuant to Rule 12(b)(6). (ECF No. 25.) Although Verizon requests the Court to compel arbitration only in the alternative, as Verizon has alleged arbitration may be required under the agreed to Arbitration Clause the Court is required to resolve the issue of arbitrability before it may consider whether the Amended Complaint sufficiently states a claim. *See Silfee*, 696 F. App'x at 577–78 (holding the court erred in resolving a motion to dismiss for failure to state a claim prior to resolving a motion to compel arbitration); *Edmondson*, 593 F. App'x at 111 (holding the court erred in denying as premature a motion to compel arbitration pending resolution of a pending motion to dismiss for failure to state a claim); *see also Dean Witter*

---

[8] The Supreme Court has also held a *forum non conveniens* motion to be a non-merit issue to be resolved prior to a motion to compel arbitration. *See Sinochem Int'l Co.*, 549 U.S. at 423.

*Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

### A.    Motion to Compel Arbitration

In reviewing a motion to compel arbitration, the court is required to make a threshold determination as to whether the motion should be considered without the opportunity for discovery under Rule 12(b)(6). *See Parkin v. Avis Rent A Car Sys. LLC*, 774 F. Supp. 3d 707, 711 (D.N.J. 2025). The Third Circuit has articulated the Rule 12(b)(6) standard of review to be inappropriate only if "the complaint and its supporting documents are unclear regarding the agreement to arbitrate" or "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 319 (3d Cir. 2024) (quoting *Guidotti*, 716 F.3d at 776). Under such circumstances, if the plaintiff demonstrates the existence of a factual dispute requiring limited discovery on the issue of arbitrability, then the court must deny the motion to provide the parties with the opportunity to conduct same, after which the defendant may file a renewed motion to compel arbitration under Rule 56. *See id.* at 319–20. If no such factual dispute exists, then the court may consider the motion under Rule 56. *See id.* A naked assertion—an assertion without the support of reliable evidence— is insufficient to demonstrate the existence of a factual dispute requiring the court to deny a motion to compel arbitration and to allow the parties the opportunity to conduct limited discovery on the issue. *Guidotti*, 716 F.3d at 774; *accord Young*, 119 F.3th at 319.

Here, Verizon moves to compel arbitration without discovery under Rule 12(b)(6). (*See generally* ECF No. 25-1 at 13–23.) In anticipation, Love argues the Motion should be reviewed after the opportunity for limited discovery under Rule 56. (ECF No. 22-1 ¶¶ 32–33.)

The alleged agreement to arbitrate is not clear on the face of the Amended Complaint. Outside of the anticipatory defenses, the Amended Complaint neither references the Agreement or CA, nor includes the terms of either as an exhibit. (*See generally id.*) Furthermore, the Amended Complaint does not base its sole cause of action on the existence of an agreement between Love and Verizon. (*See, e.g.*, *id.* ¶¶ 1 ("This action challenges a corporate policy, not a customer-service dispute."), 22 (claiming Verizon "categorically refuses direct production to *pro se* litigants").) Accordingly, the Court is required to consider the Motion to Compel under the Rule 56 standard of review. *See Young*, 119 F.4th at 318 (holding Rule 56 standard to be appropriate where the complaint made no reference to an agreement containing an arbitration clause, did not attach such an agreement as an exhibit, and the claims were not based on the existence of such an agreement).

However, Love does not demonstrate the existence of a factual dispute requiring limited discovery on the issue of arbitrability. The Amended Complaint arises from Verizon's response to the Subpoena issued in the underlying criminal action. (*See* ECF No. 22-1 ¶¶ 9, 14.) Although the Amended Complaint does not include a copy of the Subpoena, the Motion provides a copy of same. (ECF Nos. 22-1, 25–11.) Love has not challenged the validity of the Subpoena.

The Subpoena requested Verizon to release all records pertaining to the Samsung Galaxy S24 and the Apple iPhone 14. (ECF No. 22-1 ¶ 14; *accord* ECF No. 25-11.) The record establishes Love and Verizon entered into the Agreement for the devices and lines of service. (ECF Nos. 25-3, 25-4, 25-5.) Love does not deny entering into the Agreement. (ECF No. 22-1 ¶¶ 9, 14.) Nor does

14

he claim he did not execute the signature page agreeing to the terms of both the Agreement and the CA.[9] (*See generally id.*)

Rather, Love challenges the validity of the Arbitration Clause on the basis the clause was non-conspicuous and not reasonably presented. (*See id.* ¶¶ 27, 30.) However, conspicuousness is a matter of law, not an issue of fact. *See HealthplanCRM, LLC v. AvMed, Inc.*, 458 F. Supp. 3d 308, 331 (W.D. Pa. 2020); *see also Kapossy v. McGraw-Hill, Inc.*, 921 F. Supp. 234, 245 (D.N.J. 1996) ("Conspicuousness will always be a matter of law." (internal quotation marks omitted)); *Network Infrastructure Techs., Inc. v. Hackensack Univ. Med. Ctr.*, No. A-1032-21, 2024 WL 4658737, at *22 n.10 (N.J. Super. Ct. App. Div. Nov. 4, 2024), *cert. denied sub nom.* 335 A.3d 288 (N.J. 2025) ("The question of conspicuousness is always a question of law."). Accordingly, Love is not entitled to the opportunity to conduct limited discovery prior to the Court's consideration of the Motion under Rule 56. *See Young*, 119 F.4th at 320.

### 1. Rule 56

In considering whether to compel arbitration under the FAA, a court engages in a two-step analysis applying ordinary state-law principles of contract law. *See Sapp v. Indus. Action Servs., LLC*, 75 F.4th 205, 212 (3d Cir. 2023); *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 522 (3d Cir. 2019). First, the court must determine "whether there is a valid [and enforceable] agreement to arbitrate between the parties." *Sapp*, 75 F.4th at 212 (quoting *Flintkote*

---

[9] Although in anticipation the Amended Complaint claims Love "did not sign any agreement containing an arbitration or delegation clause" (ECF No. 22-1 ¶ 27), Love does not contest he entered into an agreement with Verizon for the new devices and service lines (*id*. ¶ 9). Love identifies the telephone numbers associated with his account as ending in 0396 and 0798. (*Id.* ¶ 14.) The Agreement pertains to the telephone numbers ending in 0396 and 0798. (*See* ECF Nos. 25-3, 25-4, 25-5.) Accordingly, the Court finds the record establishes Love entered into the Agreement and executed the signature page, which he does not contest. (*See generally* ECF No. 22-1.)

*Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)). If the court determines a valid and enforceable arbitration agreement exists, then the court must determine "whether the merits-based dispute in question falls within the scope of that valid agreement." *Id.* (quoting *Flintkote Co.*, 769 F.3d at 220).

To determine the relevant state-law principles to apply, "a federal court sitting in diversity must apply the choice-of-law rules of the forum state." *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (quoting *LeJeune v. Bliss–Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)); *see also Homa v. Am. Express Co.*, 558 F. 3d 225, 227 (3d Cir. 2009) ("In evaluating whether a contractual choice-of-law clause is enforceable, federal courts sitting in diversity apply the choice-of-law rules of the forum state."). As the Amended Complaint is based on diversity jurisdiction (ECF No. 22-1 ¶¶ 4–8), the Court applies New Jersey choice-of-law rules in deciding the relevant state-law principles to apply. *See White*, 870 F.3d at 263.

Pursuant to New Jersey law, an arbitration agreement's express choice-of-law provision will typically dictate the relevant state-law principles unless the proposed choice "conflict[s] with New Jersey public policy."[10] *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 331 n.21 (3d Cir. 2001) (citing *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). Absent an express choice-of-law provision, however, New Jersey applies the law "of the state with the most significant relationship to the parties and the transaction under" the *Restatement (Second) of Conflict of Laws* (Am. Law Inst. 1971) (Restatement). *Cont'l Ins. Co. v.*

---

[10] Under New Jersey law, "the choice-of-law clause may be invalidated on policy grounds if three elements are met: (1) New Jersey has a 'materially greater interest' in the 'determination of the particular issue' in dispute; (2) application of [the choice-of-law state's] law conflicts with a 'fundamental' New Jersey policy; and (3) New Jersey law would apply 'in the absence of an effective choice of law by the parties.'" *Adler v. Gruma Corp.*, 135 F.4th 55, 71 (3d Cir. 2025) (quoting *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)).

16

*Honeywell Int'l, Inc.*, 188 A.3d 297, 315 (N.J. 2018) (quoting *Restatement* § 188(1)); *accord Pfizer, Inc. v. Emps. Ins. of Wausau*, 712 A.2d 634, 638 n.2 (N.J. 1998). To make this determination, New Jersey courts have adopted the following factors for consideration under Restatement § 188: "(a) [t]he place of contracting, (b) [t]he place of negotiation of the contract, (c) [t]he place of performance, (d) [t]he location of the subject matter of the contract, and (e) [t]he domicil[e], residence, nationality, place of incorporation and place of business of the parties." *Cont'l Ins. Co.*, 188 A.3d at 315 (quoting *Restatement (Second) of Conflict of Laws* (Am. Law Inst. 1971) § 188); *see also Arafa v. Health Express Corp.*, 233 A.3d 495, 506 (N.J. 2020) (identifying factors (c) and (d) as "particularly strong ones"); *accord Adler v. Gruma Corp.*, 135 F.4th 55, 65 (3d Cir. 2025).

As neither the Agreement nor the CA includes an express choice-of-law provision (see generally ECF Nos. 25-5, 25-7), the Court determines the state with the most significant relationship to the action under the *Restatement* § 188 factors, *see Cont'l Ins. Co.*, 188 A.3d at 315. The record establishes Love is a New Jersey resident and executed the Agreement in Spotswood, New Jersey. (ECF No. 22-1 ¶ 9; ECF No. 25-4 at 1.) Furthermore, the Amended Complaint arises from Verizon's response to the Subpoena issued under New Jersey Court Rule 1:9-1. (*See* ECF No. 22-1 ¶¶ 34–41; *see also* ECF No. 25-11.) Finally, neither Love nor Verizon argue another state has a more significant relationship to the action. (*See generally* ECF Nos. 22-1, 25.) Accordingly, the Court finds New Jersey to be the state with the most significant relationship to the action and applies New Jersey principles of contract law in considering whether to compel arbitration under the FAA. *See Sapp*, 75 F.4th at 212; *In re Remicade*, 938 F.3d at 522.

17

Here, Love argues the Arbitration Clause is invalid and unconscionable; and, alternatively, the cause of action is outside of the scope of the Arbitration Clause. (ECF No. 22-1 ¶ 25.) The Court addresses each argument in turn.

### a.        Validity

In reviewing the validity of the Arbitration Clause, the Court places the proposed provision "upon the same footing as other contracts" and "may not [invoke] novel rules to favor arbitration over litigation." *Sundance*, 596 U.S. at 418; *accord Berkelhammer v. ADP TotalSource Grp., Inc.*, 74 F.4th 115, 118 (3d Cir. 2023); *White*, 61 F.4th at 339. "Under New Jersey law, '[a]n agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law.'" *James v. Glob. TelLink Corp.*, 852 F.3d 262, 265 (3d Cir. 2017) (quoting *Atalese v. U.S. Legal Services Group, L.P.*, 99 A.3d 306, 313 (N.J. 2014)). "[I]f [the] parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." *Crawford v. Compass Grp. USA*, Civ. A. No. 14-2545, 2015 WL 1006389, at *3 (D.N.J. Mar. 6, 2015) (quoting *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992); *accord Levy v. AT&T Servs., Inc.*, Civ. A. No. 21-11758, 2022 WL 844440, at *3 (D.N.J. Mar. 22, 2022). "To manifest assent, 'an offeree must provide "unqualified acceptance," which can be express or implied by conduct.'" *James*, 852 F.3d at 265–66 (quoting *Weichert Co. Realtors*, 608 A.3d at 284).

"[T]o be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified." *Lahoud v. Anthony & Sylvan Corp.*, 330 A.3d 803, 810 (N.J. Super. App. Div. 2025) (citing *Atalese*, 99 A.3d at 312–13); *see also Kernahan v. Home Warranty Administrator of Fl., Inc.*, 199 A.3d 766, 778 (N.J. 2019) ("[C]ontract terms should be given their plain and ordinary meaning."). "No particular form of words is necessary to accomplish

a clear and unambiguous waiver of rights." *Atalese*, 99 A.3d at 314; *see also Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (N.J. 2016) ("No magical language is required to accomplish a waiver of rights in an arbitration agreement."). Rather, if the language of the clause in "some general and sufficiently broad way" sufficiently "conveys arbitration is a waiver of the right to bring suit in a judicial forum, the clause will be enforced." *Cintron v. Brink's Inc.*, No. A-1981-24, 2026 WL 191316, at *3–4 (N.J. Super. Ct. App. Div. Jan. 26, 2026) (internal quotation marks omitted); *see also Atalese*, 99 A.3d at 314 ("Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.").

However, even if the terms of the arbitration agreement are clear and unambiguous, an agreement may still be unenforceable under an applicable contract defense, "such as unconscionability." *Shammout v. MSX Int'l RNS, LLC*, Civ. A. No. 23-21563, 2025 WL 957419, at *3 (D.N.J. Mar. 31, 2025) (quoting *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004)). Courts have generally recognized two categories of unconscionability, procedural and substantive. *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement," which "tak[es] into consideration facts such as 'lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" *Shammout*, 2025 WL 957419, at *5 (first quoting *Harris*, 183 F.3d at 181, then quoting *Bourgeois v. Nordstrom, Inc.*, Civ. A. No. 11-2442, 2012 WL 42917, at * 6 (D.N.J. Jan. 9, 2012)). In contrast, "[s]ubstantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side." *Id.* at *6 (quoting *Harris*, 183 F.3d at 181). "New Jersey courts may find a contract term substantively unconscionable if it is

19

'excessively disproportionate' and involves an 'exchange of obligations so one-sided as to shock the court's conscience.'" *Agrabright v. Rheem Mfg. Co.*, 258 F. Supp. 3d 470, 481 (D.N.J. 2017) (quoting *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (N.J. 2006)); *see, e.g.*, *Hall v. Treasure Bay Virgin Islands Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010) (holding a "prohibitively expensive" arbitration agreement may be substantively unconscionable).

Here, Love challenges the validity and enforceability of the Arbitration Clause. (ECF No. 22-1 ¶¶ 25, 27, 30.) Love argues the Arbitration Clause is unenforceable as the clause is procedurally unconscionable given the clause was "non-conspicuous" and "not reasonably presented."[11] (*See id.* ¶ 27.)

The Arbitration Clause is valid and procedurally conscionable. The signature page states Love was provided with the opportunity to review the terms of the Agreement prior to executing same, which incorporated by reference the terms of the CA. (ECF No. 25-5 at 2.) Indeed, the terms of the CA were available for review online. (*Id.* at 5.) Love executed the signature page agreeing to the terms of both the Agreement and CA, including "settlement of disputes by arbitration instead

---

[11] Love also argues the Arbitration Clause is unenforceable as the clause is substantively unconscionable since it violates public policy. (*See* ECF No. 22-1 ¶ 30.) Specifically, Love claims "[r]equiring a criminal defendant to arbitrate disputes about access to time-sensitive evidence is substantively unconscionable because arbitration imposes fees and delay that impair defense preparation and constitutional rights." (*See id.* ¶ 31.) First, it is well-established, "[p]ublic policy favors arbitration." *Coast Auto. Grp., Ltd. v. Withum Smith & Brown*, 995 A.2d 300, 304 (N.J. Super. App. Div. 2010). Second, Love issued the Subpoena in the underlying criminal action. (ECF No. 25-11.) Under New Jersey law, a criminal defendant possesses the right to request the court's assistance in compelling the production of favorable evidence. *See State v. Garcia*, 949 A.2d 208, 213 (N.J. 2008). Had Love wished to enforce the subpoena and compel production without triggering the need for arbitration, he was free to do so with the assistance of the New Jersey Superior Court. Accordingly, the Arbitration Clause does not violate public policy as it does not inherently require a criminal defendant to arbitrate a dispute to enforce a subpoena to compel the production of favorable evidence.

20

of jury trials." (*Id.*) The Agreement, CA, and signature page all convey an agreement to arbitration and a waiver of the right to bring suit in a judicial forum. (*See* ECF Nos. 25-5, 25-7.)

The terms of the Arbitration Clause are clear and unambiguous. (ECF No. 25-7 at 7.) *Sanford Brown Inst.*, 137 A.3d at 1181 (holding terms are clear and unambiguous if "written in a simple, clear, understandable and easily readable way"). The fact Love chose not to avail himself of the opportunity to review the terms of the Agreement, including the CA, in full prior to executing same is not a defense to enforcing the Agreement. *See Tedeschi v. D.N. DeSimone Constr., Inc.*, Civ. A. No. 15-8484, 2017 WL 1837853, at *4 (D.N.J. May 8, 2017); *see also Horowitz v. AT&T Inc.*, Civ. A. No. 17-4827, 2019 WL 77331, at *9 (D.N.J. Jan. 2, 2019) ("A party is bound by the hyperlinked-agreement, even if that party did not review the terms and conditions of the hyperlinked agreement before assenting to them." (internal quotation marks omitted)); *Skuse v. Pfizer, Inc.*, 236 A.3d 939, 952 (N.J. 2020) ("As a general rule, 'one who does not choose to read a contract before signing it cannot later relieve himself of its burdens.'" (internal quotation marks omitted)). Having executed the signature page, Love assented to the terms of the Agreement and the CA, including the Arbitration Clause. *See Burk v. Quest Diagnostics*, Civ. A. No. 22-6571, 2023 WL 3580854, at *3 (D.N.J. May 22, 2023) (recognizing "a party's signature to an agreement is the customary and perhaps surest indication of assent" (quoting *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1107 (N.J. 2003))). Accordingly, the Arbitration Clause is valid and procedurally conscionable.

### b.    Scope

In reviewing the scope of the Arbitration Clause, the Court interprets the terms of the provision under the applicable state-law principles with due regard "to the federal policy favoring arbitration." *In re Remicade*, 938 F.3d at 520 (quoting in *Jaludi v. Citigroup*, 933 F.3d 246, 255

21

(3d Cir. 2019)). As explained by the Third Circuit, the federal policy favoring arbitration merely "tip[s] the scales in favor of arbitration where state interpretive principles do not dictate a clear outcome." *Id.* at 521–22; *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 189 (2019) (stating the Supreme Court "ha[s] repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration"); *White*, 870 F.3d at 262 ("[T]he presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. Otherwise, the plain language of the contract holds." (internal quotation marks omitted)). The plaintiff, as the party resisting arbitration, "bear[s] the burden of showing that the claims at issue are unsuitable for arbitration." *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 556 n.3 (3d Cir. 2023), *as amended* (May 4, 2023) (internal quotation marks omitted) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

However, parties to an agreement may delegate the issue of scope if the valid arbitration agreement includes a delegation clause, *i.e.*, "an agreement to arbitrate threshold issues," *Button v. Dolgencorp, LLC*, Civ. A. No. 22-7028, 2025 WL 642687, at *5 (D.N.J. Feb. 27, 2025) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)), such as whether the arbitration clause covers a particular controversy "so long as the delegation is 'clear and unmistakable.'" *Brown v. Credit One Bank*, Civ. A. No. 23-23008, 2024 WL 4553683, at *6 (D.N.J. Oct. 21, 2024) (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527, (2019)); *see also Singh*, 939 F.3d at 228 (holding all questions subject to the delegation clause were for the arbitrator to decide, including whether the parties' dispute fell within the scope of the arbitration agreement). To challenge the enforcement of a delegation clause, a plaintiff is merely required to reference the clause specifically in its opposition. *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226–27 (3d Cir. 2018) ("In specifically challenging a delegation clause, a party may rely on the same arguments

22

that it employs to contest the enforceability of other arbitration agreement provisions."). Absent

same, the court must treat the clause as valid and enforce it. *See MZM Constr. Co.*, 974 F.3d at

399.

Here, Verizon argues the issue of scope must be delegated to the arbitrator.[12] Love

challenges the scope of the Arbitration Clause. (ECF No. 22-1 ¶ 25–26, 28–31.) Notably, Love

does not contest that the Arbitration Clause includes a delegation provision requiring the Court to

direct the issue of scope to the arbitrator but instead challenges the validity of the delegation

provision. (*Id.* ¶¶ 25, 27.) Specifically, like the Arbitration Clause, Love argues the delegation

provision is procedurally unconscionable as the provision was "non-conspicuous" and "not

reasonably presented." (*Id.* ¶¶ 25, 27.)

The delegation provision is valid and procedurally conscionable. In relevant part, the

provision states:

> ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES
> OUT OF THIS AGREEMENT, WILL BE RESOLVED BY ONE
> OR MORE NEUTRAL ARBITRATORS BEFORE THE
> AMERICAN ARBITRATION ASSOCIATION ("AAA") . . . .
> THIS INCLUDES, BUT IS NOT LIMITED TO, ANY DISPUTE
> REGARDING THE VALIDITY, ENFORCEABILITY, OR
> SCOPE OF ANY PORTION OF THIS AGREEMENT
> (INCLUDING THE AGREEMENT TO ARBITRATE) . . . .

(ECF No. 25-7 at 7.) The terms of the delegation provision are clear and unambiguous. *Sanford*

*Brown Inst.*, 137 A.3d at 1181. Although the record does not establish whether Love reviewed the

---

[12] Verizon also argues the issue of validity should be delegated to the arbitrator. (*See* ECF No. 25-1 at 17–19.) However, the Third Circuit has held parties may not delegate the issue of validity to an arbitrator. *See Dorset v. United Healthcare Servs., Inc.*, Civ. A. No. 23-21749, 2025 WL 2779224, at *7 (D.N.J. Sept. 30, 2025); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) ("Arbitration and delegation agreements are simply contracts, and, normally, if a party says that a contract is invalid, the court must address that argument before deciding the merits of the contract dispute.").

terms of the CA prior to executing the Agreement, the record does establish Love had the opportunity to review the terms online and assented to same, including the delegation provision. (*See* ECF No. 25-5 at 5.) Accordingly, the delegation provision is valid and procedurally conscionable. Having determined same, Love's challenge to the scope of the arbitration clause "is explicitly delegated, by the terms of the [A]greement, to an arbitrator." *Young*, 119 F.4th at 321.

Based on the foregoing, Verizon's Motion to Compel Arbitration under Rule 56 is **GRANTED**, and Verizon's Motion to Dismiss the Amended Complaint under Rule 12(b)(6) is **DENIED AS MOOT**.

## IV.    CONCLUSION

For the reasons set forth above, Verizon's Motion to Compel Arbitration (ECF No. 25) under Rule 56 is **GRANTED** and Verizon's Motion to Dismiss the Amended Complaint for Failure to State a Claim (*id.*) is **DENIED AS MOOT**. Love's Amended Complaint (ECF No. 22-1) is **STAYED** pending completion of arbitration.[13] An appropriate order follows.

Date: February 19th, 2026                           /s/ Brian R. Martinotti
                                                     **HON. BRIAN R. MARTINOTTI**
                                                     **UNITED STATES DISTRICT JUDGE**

---

[13] [T]he plain language of [FAA] § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration." *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

24